**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ADAM ARTHUR JAMISON,**

        **Plaintiff,**

**-vs-**                                                                               **Case No. 6:15-cv-1064-Orl-41DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**
_____/

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for disability insurance benefits. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

## Procedural History

Plaintiff applied for benefits, alleging that he became unable to work on December 1, 1995 (R. 217-23). The agency denied Plaintiff's applications initially and upon reconsideration, and he requested and received a hearing before an administrative law judge ("the ALJ"). On February 6, 2014, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled through March 31, 2002, the last date insured (R. 13-27). The Appeals Council declined to grant review (R. 2-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed his Complaint (Doc. 1), and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to depression, morbid obesity, high blood pressure, learning disability, tinnitus, hypoxic-anoxic brain injury, Asperger's Syndrome, anxiety, short term memory problems, and obsessive-compulsive disorder (R. 279).

*Summary of Evidence Before the ALJ*

Plaintiff was twenty-seven years old on his date last insured, March 31, 2002 (R. 16, 217) with a high school education (R. 34) and past work which did not meet the requirements to be considered past relevant work (R. 18).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections. Although the record includes reports of examiners dated 1980, 1985, 1987, 2011 and 2012, there are no medical records from treating physicians in the relevant period in the administrative record. In addition to the medical records which pre-date and post-date the relevant time period, the record includes Plaintiff's testimony, the testimony of Plaintiff's father, and the testimony of a Vocational Expert; written forms and reports completed by Plaintiff and his mother; and opinions from state agency consultants.

By way of summary, the ALJ determined that the claimant has the following severe impairments: obesity, Asperger's disorder, and learning disorder (20 CFR 404.1520(c)) (R. 18), but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 19). The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of medium work as defined in 20 CFR 404.1567(c) with mental limitations:

> The claimant can stand and/or walk up to eight hours in an eight-hour workday; sit up to eight hours in an eight-hour workday; lift and/or carry 25 pounds frequently and 50 pounds occasionally; and push/pull up to the weight capacity for lifting and carrying, which includes limitations due to his obesity. The claimant is limited to performing simple, routine, repetitive tasks meaning he can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations.

>Moreover, he is limited to occasional interaction with coworkers, supervisors, and the public. He is unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

(R. 19-20).

Relying on the assistance of the Vocational Expert, the ALJ found there were jobs that existed in significant numbers in the national economy that the claimant could have performed (R. 22), and therefore, the ALJ found Plaintiff was not disabled at any time from December l, 1995, the alleged onset date, through March 31, 2002, the date last insured (R. 23).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that the Commissioner's decision was not formulated in accordance with proper standards and was not based upon substantial evidence. Specifically, Plaintiff argues that the ALJ failed to apply correct standards to the medical opinions; failed to call a medical expert; and failed to apply the correct legal standards to Plaintiff's testimony and that of his father.

The Court examines these issues in the context of the sequential assessment used by the ALJ. The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*I. Evaluating Opinion Evidence*

Plaintiff's first objection goes to the evaluation of the medical opinion evidence in this case. The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given

to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight). Nonetheless, all opinions, even those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. *See* 20 C.F.R. §§ 404.1527, 416.927, and *Winschel*.

Plaintiff contends that the RFC is unsupported by substantial evidence in that the ALJ "failed to apply the correct legal standards when he failed to even mention, let alone weigh," the opinions of Dr. Bertics and Dr. Matthes, which Plaintiff claims are "retrospective opinion[s] which supported a finding of disability prior to Mr. Jamison's date last insured" (Brief, pp. 9-12). Plaintiff further contends that the ALJ "overlooked" portions of the opinions of Drs. McDonald and Roessler.

*Dr. Bertics*

As noted, the relevant period in this case is from December 1, 1995, the alleged disability onset date, through March 31, 2002, when Plaintiff's insured status for purposes of disability insurance benefits expired (R. 23). Plaintiff was not evaluated by neurologist Gregory M. Bertics,

M.D., until March 1, 2012, and Dr. Bertics issued his report a month later – 10 years after the relevant time period (R. 437-43).  While the Court agrees that the ALJ did not discuss or weigh this opinion, any error is harmless. "Evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue." *Gordon v. Soc. Sec. Admin., Comm'r*, 625 F. App'x 512, 514 (11th Cir. 2015).

Plaintiff cites *Vega v. Comm'r of Soc. Sec*., 2013 U.S. Dist. LEXIS 117356, at *5-6 (M.D. Fla. July 25, 2013), which in turn relied on *Boyd v. Heckler*, 704 F.2d 1207 (11th Cir.1983), for the proposition that a claimant may rely on retrospective medical opinions.  The opinion at issue in *Boyd,* however, was from a treating physician.  *Boyd,* 704 F. 2d at 1211. Here,  Dr. Bertics was *not* a treating physician, but a one time examiner.  As noted above, opinions of consultants are not entitled to the deference granted a treating provider.  While there is authority supporting the relevancy of some retrospective opinions issued by consultants, *see Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1323 (11th Cir. 2015) (the opinion of a non-treating psychologist who examined the claimant several months after the ALJ's decision was chronologically relevant, and the Appeals Council should have therefore considered this additional evidence in deciding whether to grant review), the Court does not read Dr. Bertics' report as providing a retrospective opinion entitled to consideration.

As the Eleventh Circuit has noted in unpublished opinion:

> Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence. *See Payne v. Weinberger*, 480 F.2d 1006, 1007-08 (5th Cir.1973) (holding that the ALJ erred in determining that the claimant was disabled when a retrospective diagnosis, along with all other medical evidence, supported a finding of disability); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir.1998) (ruling that "[a] retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period" and citing cases from that [sic] First, Second, Eighth, Ninth, and Tenth Circuits that were in accord).

*Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011).

Here, there is no contemporaneous evidence corroborating Dr. Bertics' opinion. The opinion was rendered 10 years after the expiration of the relevant time period and was based *solely* on reports and examinations which either *pre-dated* the onset of disability by 8 to 10 years or *post-dated* the relevant period by 9 to 10 years. *See* R. 441. Plaintiff cites no case where a non-examining consultant's opinion based on *no* evidence from the relevant time period and rendered a decade later was deemed pertinent. In fact, case law suggests otherwise. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) ("[w]e review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time" and "[w]hile Dr. Felten's opinion one year later may be relevant to whether a deterioration in Anastasia's condition subsequently entitled her to benefits, it is simply not probative of any issue in this case."); *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604 (11th Cir. 2015) (where evaluation addressed claimant's condition six months after ALJ's decision denying her application for benefits, remand not warranted); *Hubbard v. Comm'r of Soc. Sec.*, 618 F. App'x 643, 651 (11th Cir. 2015) ("The ALJ's decision in this case was rendered on November 30, 2012. Therefore, the medical records from 2013 and 2014, purportedly showing a worsening of Hubbard's conditions, are not relevant to the issues in this appeal.").

Additionally, the report does not provide support for a finding of disability during the relevant time period. In the March 2012 evaluation, Plaintiff reported memory problems and learning disabilities and expressed concern "that over the last 3 or 4 years his deficits may be worsening." (R. 437). The mini mental status exam was administered, and Plaintiff scored 28 points out of a possible 30 (R. 439). Mental status exam results were normal (R. 440-441), and an MRI was ordered. The MRI, undertaken a week later, showed no abnormalities (R. 444). Based solely on his examination and review of the pre-and-post-dated records, Dr. Bertics opined:

> My assessment is that the patient *probably* has his chronic cognitive dysfunction related to his brain injury from meningitis at age 4[1] and this is *probably* a static condition. It's clear from his history that he is been unable to work his entire life [2] he *probably* should have been on SSI this entire time. *It is possible that he has developed new medical intercurrent illnesses that may be leading to an increase in cognitive dysfunction such as on treated hypertension.*
>
> Vocational rehab has requested a neurologic assessment and possible MRI of the brain to rule out organic cause to the patients memory loss and inabilty to focus at various jobs he has had over his adult life. We will order the patient's brain MRI and also complete additional testing for other causes of memory loss to include laboratory testing with a 812 level, folate level, CMP, and TSH. I would recommend the patient obtain a primary care physician and get a good physical performed to *look for other medical problems that could be contributing to cognitive issues.* I would also recommend a formal psychiatric consultation to address the issue of possible Asperger's and to assess what seems like a history of additional behavioral trouble and determine is a candidate for any medications such as stimulant medications or antidepressants.
>
> <u>My suspicion</u> in the long run is that this is a static problem. It's doubtful we'll find a treatable cause of memory dysfunction. I think the patient is disabled from gainful employment in the American work force due to his cognitive deficits and *probably* should be in the SSI system. Certainly <u>his current</u> cognitive testing as well as his twenty-year work history to support this conclusion. I would anticipate that any job found for the patient would require significant and profound accommodations.

(R. 441-442  emphasis supplied).

Dr. Bertics opined as to his *suspicions* regarding the nature of Plaintiff's condition, and acknowledged that he could be wrong and Plaintiff could have developed a "new" illness.[3] The tentative nature of this opinion cuts against any claim of relevancy. *See Edwards,* 937 F.2d at 584 ("If a treating physician is unsure of the accuracy of his findings and statements, there is certainly no legal obligation for the ALJ to defer to the treating physician's report.").

---

[1]Plaintiff did not have meningitis at age 4, but apparently was ill at age 4 months.

[2]In fact, Plaintiff was able to, and did, work, or he would not be eligible for the disability insurance benefits at issue here.

[3]As noted, Plaintiff reported concerns that he had "worsened" over the past three or four years – well after the date last insured.

-8-

For all of these reasons, the failure to discuss a consultant's opinion rendered 10 years after the date last insured does not warrant remand here. *See Furman v. Comm'r of Soc. Sec.,* No. 2:14-CV-191-FTM-DNF, 2015 WL 2201719, at *6 (M.D. Fla. May 11, 2015) (harmless error in failing to address medical opinion issued after date last insured); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."); *see also Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015).

*Dr. Matthes*

For similar reasons, the ALJ did not err in not considering the opinion of Jessica Matthes, Ph.D., a one time examiner. Dr. Matthes evaluated Plaintiff on February 1, 2012, "to obtain a quantitative assessment of *current* level of neurocognitive functioning and aid in the formulation of management strategies*"* (R. 238-emphasis added). Notably, in the evaluation, Plaintiff's mother reported that Plaintiff has had memory difficulties all of his life, but Plaintiff's memory "seems to be getting worse over time" (R. 239). In pertinent part, Dr. Matthes opined:

> The patient's *current* performance demonstrated mild-to-severe difficulties in learning efficiency, severe memory deficits, and variable processing speed (low average to severely impaired). While *the etiology of the patient's severe memory difficulties is unclear* at this time, the fact that he reportedly stopped breathing for a period of 5 minutes during his hospitalization for spinal meningitis raises the *possibility* that during that timeframe the patient sustained a hypoxic/anoxic brain injury. This *could* account for the patient's significant learning and memory difficulties. The patient may benefit from an MRI of the brain to establish if there are any abnormalities specifically related to the hippocampi, as these brain structures are crucial for memory and are easily affected by hypoxic/anoxic brain injuries.

(R. 241emphasis added).

As with Dr. Bertics's opinion, Dr. Matthes's opinion regarding "possibilities" is speculative, at best. Indeed, an MRI taken the next month revealed no such abnormalities (R. 444). As above, Plaintiff

fails to establish that a speculative opinion based on a one time examination ten years after the relevant time period is pertinent to the instant claim.

Moreover, as noted by the Commissioner in her brief, Plaintiff fails to show how Dr. Matthes's opinion regarding Plaintiff's mental limitations is inconsistent with those limitations found by the ALJ and included in the RFC. Dr. Matthes opined that Plaintiff "would likely be best served in doing a job that is very repetitive in nature" with "no time pressures or time constraints associated with his performance." (R. 241). Plaintiff would require an extended amount of time for training, "but with repetition he should be able to do well." *Id.* Less interaction with others was advised and a position in a "not overly stimulating environment may also be to his benefit. *Id.* The ALJ included limitations of performing simple, routine, repetitive tasks; noted that Plaintiff was limited to occasional interaction with coworkers, supervisors, and the public; and found he was unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations (R. 20). Thus, any error in failing to discuss Dr. Matthes's opinion was harmless. *See Wright*, *supra*.

*Dr. McDonald and Dr. Roessler*

Plaintiff asserts that the ALJ erred in "overlooking" the opinions of Drs. McDonald and Roessler. In his decision, the ALJ considered and summarized these opinions, which pre-date the alleged onset by many years, noting:

> In 1985, the claimant was administered the Wechsler Intelligence Scale for Children and attained a full scale IQ score of 88, which was in the average to dull normal range of intellectual functioning. At that time, the claimant's father reported that his developmental milestones were within normal range. The evaluator, James R. McDonald, Ph.D, noted that the claimant was tense and hyper-alert, during testing, and seemed afraid to tasks, if they became very difficult. The claimant had no problems with communication. His general fund of information, vocabulary, arithmetic skills, and short-term memory were below average, possibly related to difficulties in reading. Dr. McDonald opined that the claimant should be classified as learning disabled in reading recognition, reading comprehension, and written expression. The claimant underwent a subsequent psychological evaluation in 1987 with Joan A. Roessler, Ph.D. The claimant was described as "pleasant, cheerful, and well-mannered." The claimant's hobbies included caring for pets and saving money from jobs, such as

>collecting and recycling metal cans. He reported that he also enjoyed cooking and wanted to learn to be a chef. He received special education services at school and his parents noted that he generally went well beyond his required assignments. He was administered the Stanford-Binet Intelligence Scale, Fourth Edition and obtained a composite score of 93, which placed him in the average range of intellectual functioning. However, he was functioning below his expected grade level in achievement tests. Moreover, he showed significantly delayed visual motor skills and significant weakness in auditory processing skills. He was recommended for regular, eighth-grade classroom instruction with resource room support and continued remediation in reading, spelling, and visual-motor skills. (Ex.(s) 1F-3F).

(R. 21).

While the ALJ did not explicitly discuss every notation made in these exhibits,[4] there is no basis to conclude that he overlooked any pertinent portion. While Plaintiff points to findings of deficits and learning difficulties, the ALJ acknowledged these. Indeed, the ALJ gave "significant weight" to these opinions, noting "[b]oth found the claimant's IQ to be in the average range and noted his deficits in achievement" and "both recommended additional supports in the classroom environment with Dr. Roessler indicating that the claimant was capable of regular classroom instruction, which is consistent with the overall record of evidence" (R. 21-22). The evaluation of these opinions comports with *Winschel*.

   *II. Medical Expert*

Plaintiff contends that the ALJ committed reversible error by failing to call a medical expert to testify as to the onset of disability, in view of Social Security Ruling 83-20 and the fact that Plaintiff's February 23, 2012 application for supplemental security income was approved (R. 16). SSR 83-20 applies when there has been a finding of disability and it becomes necessary to determine when that disability originated. SSR 83-20 at *1 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability...."). The relevant time period on the application before the ALJ, however, was December 1, 1995 through March 31, 2002,

---

[4]"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

-11-

and the ALJ determined that there was no disability in this time frame. As such, SSR 83-20 does not apply. *See Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) ("The plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began."); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) ("We conclude that the ALJ did not contravene SSR 83-20 because the ALJ ultimately found that [claimant] was not disabled, and SSR 83-20 only required the ALJ to obtain a medical report in certain instances to determine a disability onset date after a finding of disability."). The fact that the agency determined that Plaintiff was disabled in 2012, based on a separate application which related to a time period ten years later, does not change this analysis. "[T]here is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015).

   *III. Evaluating Testimony*

Plaintiff's final contention is that the ALJ did not apply the correct standards in evaluating the testimony of Plaintiff and his father. A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. *Dyer,* 395 F.3d at 1210. "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on

substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

Here, the ALJ listed numerous reasons for his credibility finding and these reasons are supported by substantial evidence. The ALJ found that "[u]ltimately, from December 1, 1995 through March 31, 2002, [Plaintiff's] statements concerning his impairments and their impact on his ability to work do not support a finding of disability" (R. 21). The ALJ reached this conclusion "in light of [Plaintiff's] own description of his activities and lifestyle, the degree of medical treatment required, the reports of treating and examining practitioners, and the findings made on examination" (R. 21). The ALJ noted that Plaintiff was able to make academic progress, including graduating from high school, despite being diagnosed with Asperger's syndrome and a learning disorder (R. 21, 34, 450). Contrary to Plaintiff's assertion, the ALJ did consider that Plaintiff was in special education classes (R. 20, 34), but he also noted that Dr. Roessler recommended Plaintiff be placed in a regular eighth-grade classroom (R. 21, 420). Although Plaintiff argues that he was only a "local driver," the ALJ noted (and Plaintiff does not dispute) that he passed the driver's test and drove a car on a regular basis; he shopped in stores, did household chores, prepared meals, used a computer to check job listings, and worked out (R. 21, 305-07). The ALJ also noted Plaintiff's ability to engage with evaluators in testing environments, and his work history; all findings supported by record evidence. *Id.*

To the extent Plaintiff's contentions amount to an argument that other evidence or other inferences from the evidence could support a different finding, such is not the standard here. "The question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Here, the ALJ provided a detailed analysis of the evidence of record, supplied a rationale for his findings, and his conclusions are supported by the evidence he cites. "If the

Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted). As the Court finds the decision meets the legal standard, no error is shown.

At the administrative hearing, the ALJ also heard testimony from Plaintiff's father, Arthur E. Jamison (R. 45-64). As the ALJ noted, Mr. Jamison testified that Plaintiff had short-term memory difficulties, problems doing things beyond simple instructions or tasks, and difficulty relating with others (R. 20). Plaintiff contends that the ALJ failed to state the weight he gave to the testimony of Plaintiff's father. Citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983), Plaintiff argues that it the testimony of a family member is evidence of a claimant's symptoms, and contends it was error for the ALJ to fail to state the weight, if any, he accorded to Mr. Jamison's testimony. The Court sees no error.

While Mr. Jamison's testimony was not explicitly weighed, the implicit weight given to the testimony is "obvious to the reviewing court." *Tieniber,* 720 F. 2d at 1255. The ALJ made findings which, in large measure, are consistent with the testimony of Mr. Jamison. The ALJ found that: "[d]ue to his impairments, the claimant has difficulty with social interaction and relating to others, as well as in his activities of daily living and ability to perform anything other than simple tasks" and noted that Plaintiff "has difficulty in new environments and difficulty with changes in his environment" (R. 19). The RFC reflects these findings. To the extent other portions of Mr. Jamison's testimony are consistent with Plaintiff's allegations that his impairment was disabling, that testimony is cumulative and, as the ALJ explicitly discounted Plaintiff's allegations, it is "obvious" that the ALJ implicitly rejected the similar testimony. *See Osborn v. Barnhart,* 194 F. App'x 654, 666 (11th Cir. 2006) ("while the ALJ could have mentioned Mrs. Osborn's statements, we conclude that the ALJ's

specific and explicit credibility determination as to Osborn's testimony sufficiently implies a rejection of Mrs. Osborn's testimony as well."). As that finding is supported by substantial evidence, it should not be disturbed.

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the administrative decision be **AFFIRMED.** If this recommendation is adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on April 8, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy